UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL SIMONEAUX | * | CIVIL ACTION NO. 23-4263 |
| | * | |
| VERSUS | * | SECTION: "A"(4) |
| | * | |
| TAYLOR SEIDENBACH, INC. ET AL. | * | JUDGE JAY C. ZAINEY |
| | * | |
| | * | MAGISTRATE JUDGE KAREN WELLS ROBY |
| | * | |

## ORDER AND REASONS

The following motions are before the Court: **Partial Motion to Dismiss Punitive Damages Claim Pursuant to Rule 12(b)(6) (Rec. Doc. 54)** filed by Defendant Colgate-Palmolive Company, individually and as successor-in-interest to the Mennen Company ("Mennen"), and **12(b)(6) Motion to Dismiss Claims for Punitive Damages and Civil Conspiracy (Rec. Doc. 96)**, filed by Defendant Johnson & Johnson ("J&J"). Plaintiff, Michael Simoneaux, opposes both motions. The motions, submitted for consideration on December 6, 2023, are before the Court on the briefs without oral argument. For the reasons that follow, Mennen's motion (Rec. Doc. 54) is **GRANTED** and J&J's motion (Rec. Doc. 96) is **GRANTED IN PART AND DENIED IN PART**.

### I.   Background

Plaintiff, Michael Simoneaux, initially brought this suit against his former employers for exposing him to asbestos, alleging that such exposure resulted in his mesothelioma diagnosis. (First Supplemental, Amended, and Restated Petition for Damages and Demand for Jury, Rec. Doc. 1-3, ¶¶ 2, 7-14). He subsequently amended his complaint, incorporating Mennen and J&J, asserting that from the 1960s until the 2000s, he consistently used Mennen Baby Magic and J&J Baby Powder, and that those products contained asbestos. (Second Amended and Restated

1

Complaint for Damages and Demand for Jury, Rec. Doc. 15, ¶¶ 2, 7). Simoneaux sued under several theories of liability, including negligence, strict liability, products liability, civil conspiracy, and professional vender liability. (Rec. Doc. 54-1, at 2). He also seeks punitive damages from each of Mennen and J&J under a former Louisiana statute. (Rec. Doc. 15, ¶¶ 48-50).

In support of his punitive damages claim, Simoneaux alleges that Mennen and J&J, collectively referred to as the "Talc Defendants,"[1] acted maliciously, wantonly, and recklessly, and with conscious indifference and utter disregard to health, safety, and the rights of others, by exposing him to products containing asbestos. (*Id.* ¶ 49). He claims that they knew of the high risk of cancer posed by the powder products before manufacturing, marketing, distributing, and selling, and minimized these risks. (*Id.*).

In response, Mennen and J&J have each moved to partially dismiss the complaint as to the punitive damages claim under Rule 12(b)(6). Both assert that Simoneaux failed to allege that Mennen or J&J stored, handled, or transported products as is required under the applicable punitive damages statute. Additionally, J&J requests dismissal of the civil conspiracy claim under Rule 12(b)(6), arguing that civil conspiracy is not an independent cause of action under Louisiana law, and that Simoneaux has failed to plead with particularity the overt acts necessary to prove conspiracy to commit fraud under the strict pleading standards set forth under the Federal Rules of Civil Procedure. Simoneaux opposes both motions.

**II.      Legal Standard**

---

[1] Simoneaux also names K&B Louisiana Corporation d/b/a Riteaid Corporation, individually and as successor-in-interest to Katz & Bestoff, Inc., as the third talc defendant ("Riteaid"). Because Riteaid did not move to dismiss and is not implicated in the instant motions to dismiss, this order is exclusively referring to J&J and Mennen when using the term "Talc Defendants."

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679)).

In the context of a motion to dismiss, the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995)).

### III. Analysis

#### A. *Punitive Damages*

Simoneaux alleges that his consistent use of Mennen Baby Magic and J&J's Baby Powder contributed to his asbestos exposure and subsequent mesothelioma diagnosis. Among other causes of action, he asserts that Mennen's and J&J's actions subject them to liability under the applicable punitive damages statute. As an initial matter, there is a "general public policy against punitive damages" in Louisiana. *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002). Such damages are only permissible where expressly authorized by statute. *Id.* Additionally, such statutes are to be strictly construed. *Id.* No punitive damages statute is currently in effect that is applicable to the instant circumstances; however, during the time that Simoneaux allegedly used the defendants' talc products, former Civil Code article 2315.3 was in effect, which provided:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.

La. Civ. Code art. 2315.3. The applicability of this provision is uncontested and therefore the Court will presume that it is effective for the purposes of this motion.[2] For former article 2315.3 to apply, the plaintiff must show that (1) the defendants' conduct was wanton and reckless, which requires a showing of a disregard of an excessive degree of danger that they knew or should have known about; (2) the danger threatened or endangered public safety; (3) the activity "occurred in the storage, handling or transportation of hazardous or toxic substances"; and (4) the plaintiff's injury was caused by this conduct. *Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1237 (La. 2003).

In their motions to dismiss, the defendants primarily assert that Simoneaux failed to sufficiently allege that Mennen's and J&J's conduct included the storage, handling, or

---

[2] Louisiana courts have continued to recognize the viability of this statute so long as some of the activity occurred while the statute was still in effect, relying on section 2 of the Act, which states that the provisions are only applicable to those causes of action arising on or after the effective date. *See Badon v. R.J. Reynolds Tobacco Co.*, 934 So. 2d 927, 930 (La. App. 3 Cir. 7/12/06); *Ross*, 828 So. 2d at 549 n.3.

transportation of the product, as is required under former article 2315.3. Instead, they argue that their activity was limited to its manufacture, design, and labeling of the talc products. Louisiana law governing the interpretation of punitive damages statutes requires the words "storage, handling, or transportation" to be interpreted conservatively, with their natural definitions. For instance, in *Badon*, the plaintiff filed suit against the manufacturers of tobacco products for contributing to her throat, larynx, and vocal cord cancer. *Badon*, 934 So. 2d at 929. She requested punitive damages for their failure to warn, suppression, and distribution of unreasonably dangerous per se products. *Id.* at 930. However, the court refused to read the punitive damages statute so broadly, stating that "the mere fact that a potentially hazardous product causes injury does not automatically bring a defendant allegedly involved with the product within the ambit of La. Civ. Code art. 2315.3." *Id.* at 931. Instead, the court found that Badon's allegations that the tobacco defendants "handled their product in such a manner as to increase its addictive propensity" failed because the allegation itself "sound[ed] in the *design* of the cigarettes, and not the handling," and their activity was thus excluded from the statute's scope. *Id.* at 932 (emphasis added). The Louisiana Supreme Court has interpreted the statute similarly, holding that this article "mandates that only those parties who actually stored, handled, or transported" the products may be liable for punitive damages. *Ross*, 828 So. 2d at 555.

Cases applying this statute show the stark difference between its proper application and Simoneaux's requested application. In *In re New Orleans Train Car Leakage Fire Litigation*, a railroad tank car leaked butadiene and exploded, injuring several individuals. 671 So. 2d 540, 543 (La. App. 4 Cir. 1996). The court found some defendants liable for punitive damages, but excluded those who had never gained possession or control of the material. *Id.* at 546. Additionally, *Ross* approvingly cited *Dumas v. Angus Chemical Co.*, in which a defendant had designed processing

5

tanks holding nitromethane that exploded. *Ross*, 828 So. 2d at 556 (citing *Dumas v. Angus Chemical Co.*, 728 So. 2d 434, 436 (La. App. 2 Cir. 1998)). The *Ross* court agreed that "a defendant must be in the 'possession or control' of a substance, and then handle, or otherwise deal with that substance, to be held liable for punitive damages." *Id.*

This precedent makes clear the difference between storage, handling, or transportation on one hand and the role manufacturers play on the other. Much as Badon sued the manufacturers of cigarettes alleging that the consumption of the cigarettes resulted in her cancer diagnosis, *Badon*, 934 So. 2d at 929-30, Simoneaux has alleged that his mesothelioma diagnosis is, at least in part, a result of the alleged presence of asbestos in Mennen's and J&J's talc powder products and exposure from his use of those products. Simoneaux makes no allegations that his injuries occurred in the course of the storage, handling, or transportation of the baby powder; rather, it is fully premised on the manufacturing and labeling of the product. Similar to how the harmful effects of cigarettes in *Badon* did not expose the tobacco defendants to punitive liability despite Badon's allegations that the companies withheld information regarding the carcinogenic effects of cigarettes, the alleged presence of asbestos in Mennen's and J&J's baby powder products and misrepresentation of the safety of those products do not fall within the scope of former Civil Code article 2315.3 to impose punitive liability.

For the reasons described above, both partial motions to dismiss are **GRANTED** as to the punitive damages claims.

### B. Civil Conspiracy

In addition to the punitive damages claim, J&J's Motion to Dismiss (Rec. Doc. 96) requests that the civil conspiracy claim be dismissed for failure to comply with federal pleading standards. As an initial matter, Louisiana's civil conspiracy statute does not create an independent cause of

action. *Crutcher-Tufts Resources, Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. App. 4 Cir. 2008) (citing *Ross*, 828 So. 2d 546). Rather, if a civil conspiracy exists, the members of that civil conspiracy are liable, in solido, with the other members of the conspiracy for the damage caused by their actions. La. Civ. Code art. 2324. As Simoneaux properly points out, courts are entitled to glean the underlying intentional tort in a civil conspiracy claim, where such a conclusion is reasonable. *See Ames v. Ohle*, 97 So. 3d 386, 393-94 (La. App. 4 Cir. 2012). Here, Simoneaux claims in opposition to the motion to dismiss that his allegations specifically refer to both La. Civ. Code art. 1953[3] and La. Civ. Code art. 2317[4] as the underlying torts.

The Court believes that the civil conspiracy count implicates article 1953. J&J is correct in stating that Simoneaux, to survive this motion, "must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy'" due to the stricter pleading requirements for fraud. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)). In pleading fraud, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). J&J argues that Simoneaux failed to attribute particular acts to each conspirator, and, for that reason, fails to properly plead conspiracy to commit fraud, relying on precedent from this Court that protects against guilt by association and "lump[ing] all defendants together." *See SEC v. Blackburn*, No. 15-2451, 2015 WL 5307424, at *5 (E.D. La. Sept. 10, 2015); *Christensen v. WMA Consumer Servs., Inc.*, No. 03-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003).

---

[3] Article 1953 governs fraud, which may result from either misrepresentation or silence. La. Civ. Code art. 1953.
[4] Article 2317 extends an individual's liability to cover the acts of those that answer to that individual and to the belongings within the individual's control. La. Civ. Code art. 2317.

7

J&J, however, takes too broad a reading of the protections against grouping defendants together in fraud pleadings. Not only does Simoneaux clarify that the only defendants referred to as "Talc Defendants" throughout the complaint are J&J, Mennen, and a third defendant not involved in the pending motions, but he also asserts that the purported members of the conspiracy performed a series of overt acts in furtherance of the conspiracy to willfully misrepresent and suppress the truth of the alleged risks of their talc products. These acts include: withholding, suppressing, and concealing medical and scientific data relating to the products; editing and deleting portions of scientific papers submitted to the United States Toxicology Program on July 27, 2005; instituting a defense strategy, including influencing the NTP Subcommittee through threats of litigation, to protect talc from being classified as a carcinogen; and disseminating medical and scientific data and test reports containing false information relating to the risks of ovarian cancer through incorrect, incomplete, outdated, and misleading information, specifically on July 1, 1992, July 8, 1992, and November 17, 1994. Simoneaux has further alleged that he relied in good faith upon these fraudulent misrepresentations and omissions and, on that basis, was injured by the Talc Defendants' joint activity. Although Simoneaux does not state explicitly which of the Talc Defendants committed each specific act, at the pleading stage, the issue is whether fraud has been shown by detailing the issues of who, what, when, where, and how the alleged conspiracy took place. Simoneaux has described overt acts in furtherance of the alleged conspiracy, including specific dates, and has named the purported members of the conspiracy. Therefore, the civil conspiracy claim is sufficiently alleged to survive this motion.

For the above reasons, J&J's partial motion to dismiss is **DENIED** as to the civil conspiracy count.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss Punitive Damages Claim Pursuant to Rule 12(b)(6) (Rec. Doc. 54)** filed by Defendant Colgate-Palmolive Company (Mennen) is **GRANTED**, as described above.

**IT IS FURTHER ORDERED** that the **12(b)(6) Motion to Dismiss Claims for Punitive Damages and Civil Conspiracy (Rec. Doc. 96)** filed by Defendant Johnson & Johnson is **GRANTED IN PART AND DENIED IN PART**, as described above.

December 22, 2023

                                                JAY C. ZAINEY
                                   UNITED STATES DISTRICT JUDGE